IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

HOWARD CONNICK,

        Plaintiff,

vs.

                                             Civ. No. 02-0592 JB/LCS

JO ANNE B. BARNHART,
Commisioner, Social Security
Administration,

        Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court upon Plaintiff's Motion to Reverse and Remand (Doc. 15) filed June 11, 2003. The Commissioner of Social Security ("Commissioner") issued a final decision denying Plaintiff's application for a continuance of disability benefits and supplemental security income ("SSI") benefits under Title XVI of the Social Security Act. Plaintiff filed a Memorandum in support of his motion (Doc. 16); Defendant filed a Response on July 21, 2003 (Doc. 17), and Plaintiff filed his Reply on August 8, 2003 (Doc. 18). Having considered the Motion, the Memorandum, the Response, the Reply, the administrative record, and the applicable law, and being fully advised, I find the Plaintiff's motion is not well-taken and recommend that it be denied.

**Standard of Review**

       1.      As in an initial disability determination, in a termination case, the court examines the record to determine whether the Commissioner applied the correct legal standards and whether the Commissioner's final decision is supported by substantial evidence. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). The standard requires such relevant evidence that a reasonable mind could

accept as adequate to support a conclusion.  *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

The question the reviewing Court must ask is whether the Commissioner's final decision is supported

by substantial evidence and whether she applied the correct legal standards.  *Hamilton v. Sec'y of

Health and Human Svcs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence requires

more than a scintilla, but less than a preponderance, and is satisfied by such relevant evidence that

reasonable mind might accept to support the conclusion.  *Gossett v. Bowen*, 862 F.2d 802, 804 (10th

Cir. 1988).

      2.     If a claimant is found to be disabled and entitled to benefits or to a period of disability,

the Commissioner will engage in a continuing disability review to determine if a claimant has made

any medical improvement.  20 C.F.R. § 404.1593.  Medical improvement is defined as a decrease in

the medical severity of an impairment that existed at the time of a claimant's most recent favorable

decision regarding disability.  20 C.F.R. § 404.1593(b)(1).  A determination of a decrease in the

severity of a claimant's impairment must be supported by a comparison of prior and current medical

evidence that shows improvement in the symptoms, signs, or laboratory findings associated with the

impairment.  *Id.*

      3.     The Secretary has established an eight-step process for evaluating whether a claimant's

disability benefits should be terminated.  20 C.F.R. § 404.1594(f)(1)-(8).  The evaluation steps

include determining whether the claimant is engaged in substantial gainful activity, whether claimant's

impairment(s) meets or equals a listed impairment, whether there has been a medical improvement,

whether that improvement is related to a claimant's ability to do work, whether the current

impairments, in combination, are severe, whether the claimant can perform work done in the past

based on the clamant's residual functional capacity, and whether there is other work in the national

economy that claimant can perform.  *Id.*  The Commissioner carries the burden to prove that a claimant has experienced medical improvement.  *Glenn*, 21 F.3d at 987.

**Procedural History**

4.      Plaintiff, now 44 years old, first applied for disability insurance benefits and for SSI pursuant to Title XVI of the Social Security Act ("Act") on February 1, 1993.  R. 69.  Plaintiff received a GED and his past relevant work is as a heavy equipment operator and carpenter.  R. 100, 108.  He suffered back injuries as a result of lifting heavy objects while working and has not worked since December 17, 1991.  R. 69.  In February 1992, Plaintiff underwent back surgery consisting of a diskectomy in order to repair a disc rupture.[1]  R. 201.  In February 1993 Plaintiff's treating physician, Barry M. Diskant, M.D., reported that Plaintiff continued to suffer from lower back pain as well as pain in his right sciatica.  R. 212.  In June 1993, Plaintiff reported that his "leg collapses and goes numb several times a week" and that he suffered from "severe low back pain, with cramps and swelling" in his right leg.  R. 91.  In August1993, Plaintiff underwent another back surgery, this time a lumbar fusion.[2]  R. 218.

5.      Plaintiff's application for disability insurance benefits was denied at the initial level on March 24, 1993 (R. 82-85) and at the reconsideration level on May 3, 1993 (R. 89-90).  Plaintiff appealed the denial of his application by filing a Request for Hearing by Administrative Law Judge ("ALJ").  R. 91.  On February 23, 1994, ALJ Neufeld found Plaintiff eligible for disability insurance

---

[1]  Diskectomy involves the removal of part of a herniated disk in the spine and it is done to relieve pressure on the nerve. In this procedure, the core of the disk is removed.  WebMD, Medical Information, available at http://my.webmd.com/content/article/65/72632.htm

[2]  A lumbar fusion is the union of the vertebrae above and below a disc that has been removed.  WebMD, Medical Information, available at http://my.webmd.com/content/article/53/61368.htm.

benefits as well as SSI due to his spinal impairment.  R. 271-72.  ALJ Neufeld found that Plaintiff's disability began on October 17, 1991 and that Plaintiff was unable to perform even a limited range of sedentary work.  R. 271-73.

6.      Plaintiff had a continuing disability interview on or about February 14, 1998.  R. 275-282.  In early December 1998, Plaintiff received notice from the Social Security Administration that his period of disability ended in December 1998 and that his disability benefits would cease in February 1999.  R. 284-85.   On December 8, 1998, Plaintiff filed a Request for Reconsideration alleging continuing disability.  R. 288.  On April 26, 1999, the Regional Commissioner found that Plaintiff was not disabled under the Act and denied Plaintiff's request for continuance of disability benefits.  R. 299.  Plaintiff appealed by filing a Request for Hearing by ALJ on May 11, 1999.  R. 322.  Plaintiff appeared and testified at hearing held on August 9, 1999.  R. 36.  Kevin Davis, a vocational expert, also testified at the hearing.  *Id.*  Plaintiff was represented by Richard B. Walker, Esq.

7.      Plaintiff testified before the ALJ that he was receiving disability retirement from the state pursuant to the Act and that he was also receiving workmen's compensation.  R. 41.  Plaintiff further testified that his normal activities involved driving his wife to work, walking around the mall, and occasionally going to the movies.  R. 45.  Plaintiff also reported that he was currently taking Celebrex, Ambien, and Cyclobenzaprine for his continuing back pain as well as for his difficulty with sleeping due to the pain.[3]  R. 48. Plaintiff testified that he experienced pain, swelling, and a burning sensation in his leg often times when he walked or if he stayed immobile for a long period of time.

---

[3]  It should be noted that Plaintiff has been on pain medication ever since his first operation and will continue to be on some sort of pain medication throughout his life because he will always experience some amount of pain.  R. 335.

R. 49. Plaintiff noted that his treating physician, Dr. Delahoussaye, stated that his condition would not further improve. *Id.*

8.     Under questioning from his attorney, Plaintiff testified that he has worked as a heavy equipment operator and laborer since the age of 14 and that he could not continue work as a heavy equipment operator any longer because he would risk paralysis if he did so. R. 50. Plaintiff testified that in his view, he had not at all improved since ALJ Neufeld's finding of disability in 1994. R. 51. Plaintiff reported that since his lumbar fusion in 1993, he is prevented from bending and twisting and that he can lift ten pounds frequently and twenty pounds occasionally. R. 52. Further, he testified that he can only sit for thirty minutes before he has to get up and move around. *Id.* Plaintiff indicated that in the previous two years he had received epidural shots in his back in order to help relieve spasms, swelling, and burning sensations in that region as well as Toradol shots to alleviate the swelling and tension in his tailbone. R. 53. Plaintiff also testified that his right leg also goes numb at times. R. 54. Plaintiff testified that since his surgery in 1993, physical therapy did not really help him and has in fact aggravated his condition. R. 55.

9.     In the course of the hearing, the ALJ also questioned Kevin Davis, a vocational expert. R. 59-63. Mr. Davis noted that Plaintiff's past relevant work as a heavy equipment operator was skilled and required medium exertion. R. 60. While Plaintiff could not perform his past relevant work, Mr. Davis noted that Plaintiff would have acquired transferable skills such as the ability to follow work orders and oral instruction. *Id.* The ALJ asked Mr. Davis to evaluate a hypothetical individual with an ability to lift 5 pounds frequently and 10 pounds on occasion, an ability to stand, sit, or walk up to six hours in a an eight-hour work day, and an ability for activity limited to occasional postural movements, but with an inability for regular bending and twisting. R. 60-64.

Further, the hypothetical individual needed a job that would allow him to choose whether he wanted

to sit or stand.  R. 62.  Mr. Davis was able to identify several jobs, including surveillance system

monitor and sedentary cashier, that a hypothetical individual with Plaintiff's limitations could perform.

R. 64.

      10.      ALJ Cole issued his decision on October 21, 1999, analyzing Plaintiff's claim

according to the analysis set forth in 20 C.F.R. § 404.1594(f)(1)-(8).   At the first step of the

sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since

the initial finding of disability in 1994.  R. 25.  At the second step, the ALJ determined that the

severity of Plaintiff's impairment or combination of impairments did not meet or equal any of the

impairments found in the Listing of Impairments.  Appendix I, Subpart P, 20 C.F.R. §§ 401.1501-

1599.  R. 26.  The ALJ reported that he paid close attention to Listing Section 1.05C and that

Plaintiff's condition did not meet this listing because there was no evidence of radiculopathy or

muscle spasms in the record.[4]  R. 26.  At the third and fourth steps, the ALJ found that there had been

medical improvement since the initial determination of disability because in the initial determination,

Plaintiff was found unable to perform even sedentary work; whereas several years later, Plaintiff had

regained the ability to perform light work as of December 1, 1998.  *Id.*  At the next step, the ALJ

determined that Plaintiff's impairments at the time of his decision were not severe because the

evidence showed that Plaintiff's impairments in combination did not significantly limit Plaintiff's

ability to do basic work activities.  R. 25-26.  At the final step, the ALJ found that based on an

assessment of Residual Functional Capacity ("RFC") as well as the opinions of various treating and

---

     [4]  Radiculopathy is defined as "any diseased condition of roots of spinal nerves." *Taber's Medical Dictionary*, 1551 (16ed. 1989).

examining physicians, Plaintiff was unable to return to any past relevant work but that as Mr. Davis testified, there are jobs existing in significant numbers in the national economy that Plaintiff can perform.  R. 27.  The ALJ found that commencing upon December 1, 1998, Plaintiff was not disabled under the Act.  R. 28.  Plaintiff filed a Request for Review of Hearing Decision and on March 26, 2002 the Appeals Council, after considering the contentions raised in the brief, denied Plaintiff's request for review.  R. 7.  Hence the decision of the ALJ became the final decision of the Commissioner for purposes of judicial review.  On May 23, 2002 Plaintiff filed this action, seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

**Administrative Record**

11.     On February 14, 1998, in a report for the continuing disability interview, Plaintiff indicated that he continued to have back pain and experienced swelling in his back and numbness in his legs when he stayed in one position for too long.  R. 275, 278.  He also reported that he was taking Soma, Nortriptyline, Cyclobenzaprine, and Darvocet for his pain.  R. 276.  Further, he indicated that he could drive a car.  R. 279.

12.     In his Reconsideration Report for Disability Cessation, filed on December 21, 1998, Plaintiff again explained his lower back pain and numbness in his right leg and indicated that his physical condition had deteriorated during the last several years.  R. 290.  He also indicated that could do most things for himself except anything that required bending.  R. 293.

13.     Plaintiff worked as a heavy equipment operator from October 1977 to April 1986 and then worked for two months as a carpenter before returning to employment as a heavy equipment operator from June 1986 to December 1991.  R. 108.  Plaintiff reported that as a heavy equipment operator he often had to bend and frequently had to lift objects weighing up to 50 pounds and

sometimes had to lift objects that weighed over 100 pounds.  R. 109.  He also reported having supervisory responsibilities and using technical skills.  *Id.*  As a carpenter, the heaviest weight Plaintiff lifted was 50 pounds and he frequently lifted objects up to 25 pounds.  R. 110.

14.     On August 19, 1997, Dr. Diskant performed a consultative examination on Plaintiff. R. 325-335.  Dr. Diskant was Plaintiff's treating physican and began seeing Plaintiff from October 1991 and periodically until January 1994.  R. 327-331.  Plaintiff complained of a ripping sensation in his right buttocks and thigh followed by a sensation of numbness down his right leg.  R. 332.  He said he experienced four of five episodes of the ripping sensation per week.  *Id.*   He also reported that he did have some asymptomatic periods.  *Id.*  Plaintiff stated that he could not sit continuously for more than 30-60 minutes, stand continuously for more than 20-30 minutes, walk more than 2 miles slowly, or drive for more than 45 minutes at a time.  R. 333.  Plaintiff also expressed his opinion that physical therapy did not result in any long-term relief.  *Id.*  Plaintiff indicated that his back had been stable in that he had not experienced much change over the last few years.  *Id.*

15.     Dr. Diskant noted that Plaintiff walked with a normal gait, that he could walk on his heels and toes, and that he was able to squat.  R. 335.  There were no involuntary muscle spasms in the paralumbar region and his sciatic nerve and surgical scars were nontender.  R. 334. Dr. Diskant also noted that three of five Waddell's signs were present, leading him to believe that there was a strong possibility that Plaintiff was magnifying his symptoms, and he further noted that there was no record of active radiculopathy.[5]  R. 334-35.  According to Dr. Diskant Plaintiff reached maximum

---

[5]  There can be a discrepancy between a patient's subjective complaints of pain and objective findings of such.  Waddell's signs help to measure this discrepancy.  There are five signs which include, tenderness, simulation, distraction, regional disturbances, and overreaction.  A presence of three or more of the signs can suggest that the patient creates symptoms in order to "get attention and remuneration" as well as to "avoid personal and work responsibilities."  CWCE Magazine for Workplace Professionals, available at,

medical improvement by May 10, 1995 and would have to accept the level of pain which he experienced.   R. 335.  Further, Dr. Diskant reported that Plaintiff was capable of light work and could lift 10 pounds constantly, 15 pounds frequently, and up to 30 pounds occasionally and should engage in work that would allow him to alternate between sitting, standing and walking positions. *Id.*

16.     Dr. Delahoussaye was Plaintiff's treating physician beginning in May 1994 and through 1999.  R. 337.  In May 1995, Dr. Delahoussaye indicated that Plaintiff was not able to work but that he would be able to return to light work by June of the same year and that he could frequently lift 20 pounds and occasionallly lift 30 pounds.  R. 363, 411.  Dr. Delahoussaye did not see Plaintiff from May 1995 to May 1997 because the record indicates that Plaintiff was incarcerated at that time.  R. 430-60.  The record also indicates that Plaintiff continued to complain of lower back pain and received medication to alleviate the pain throughout this time period.  R. 435, 438, 443. After Plaintiff was released, he began seeing Dr. Delahoussaye again.  On July 14, 1997, Dr. Delahoussaye noted that he suspected that Plaintiff suffered from radiculopathy and that "the patient had a positive response to the diagnostic and therapeutic injection which is indicative of a...radiculopathy."  R. 340-41.  However, on September 2, 1997, he concurred with Dr. Diskant's assessment in August of the same year that there was no evidence of active radiculopathy.  R. 338, 399.  *See* R. 334-35.  On December 22, 1998, Dr. Delahoussaye indicated that Plaintiff could return to light work and could lift 20 pounds frequently.  R. 365, 397.  On July 20, 1999 Dr. Delahoussaye performed a needle examination on Plaintiff to determine whether there was any evidence of active radiculopathy and he assessed that there was no active denervation.  R. 468.  On August 3, 1999, Dr.

---

http://www.cwce.com/feinbergarticles/symtommagnification.htm

Delahoussaye again noted that suspected radiculopathy was present and further noted, "Mr. Connick had a positive initial response to the diagnostic and therapeutic injection which is indicative of a...radiculopathy." R. 470.  Dr. Delahoussaye saw Plaintiff five more times that year and never again mentioned any signs of radiculopathy.  R. 471-76.  In November 1999, Dr. Delahoussaye indicated that Plaintiff's work restrictions remained the same as he earlier reported.  R. 475.  *See* R. 365, 397.

17.     Frank Jones, MD, performed a consultative orthopedic examination on August 3, 1998.  R. 345-51.  Plaintiff complained of tingling and numbness in his right leg and sometimes in his left leg after walking.  *Id.*  He aslo reported a popping sensation in his lower back and estimated that he could stand for 10-20 minutes.  *Id.*  Dr. Jones noted that Plaintiff was in no acute distress and that Plaintiff did not experience any definite muscle spasm.  R. 346-47.  Dr. Jones further reported that Plaintiff did experience a decreased range of motion of the neck but there was no tenderness or muscle spasms in that region. R. 346.  Dr. Jones indicated that Plaintiff was able to walk around the examination room without difficulty and without the use of assistive devices.  *Id.*  He could walk on his heel and toes and could squat.  R. 346-47.  Dr. Jones noted that there was  no evidence of lumbar radiculopathy and that it appeared that Plaintiff was magnifying his symptoms.  R. 347.  The doctor's final assessment was that Plaintiff could do light to medium work that did not involve frequent bending of the back and that he could frequently lifting of up to 20 pounds and up to 35 pounds occasionally.  *Id.*

18.     A physical RFC assessment was performed on Plaintiff on December 3, 1998.  R. 352-60.  According to the assessment, Plaintiff could lift 10 pounds frequently and 20 pounds occasionally and could stand or walk for a total of 6 hours in an 8-hour workday.  R. 353.  Plaintiff further would

need to have the option of alternating from sitting to standing positions in order to alleviate pain he experienced in his lower back. *Id.*

19. Eugene P. Toner, MD, performed a consultative exam on March 2, 1999. R. 415-421. Plaintiff expressed to Dr. Toner that his condition had gotten worse from when he first started receiving disability benefits in 1994 and that he had significant lower back pain coupled with numbness in his right leg. R. 415. He reported that he spent his days doing some sitting, walking, standing, and lying down and that he was able to drive his wife to work. *Id.* Plaintiff reported that he used a cane and that he lay down between 8 to 20 times a day for 15 minutes to an hour each time. *Id.* Plaintiff further indicated that he could lift 10 to 20 pounds. Dr. Toner remarked that three out of five Waddell's signs were present and further stated that Plaintiff did not "give as much effort as one would expect he should be able to do, even regarding his injuries." R. 417-18. Dr. Toner further expressed that Plaintiff should be able to do exactly what Dr. Diskant indicated that he could do even two years earlier in 1997: engage in light work and lift 10 pounds frequently and 30 pounds occasionally. R. 418. *See,* R. 335.

**Analysis**

20. In his Memorandum to Reverse and Remand for Rehearing (Doc. 16), Plaintiff argues that the ALJ erred in determining that Plaintiff's impairments did not meet a Listing found in the Listing of Impairments. Plaintiff also contends that the ALJ erred in finding that Plaintiff was not credible.

21. Plaintiff contends that the ALJ erred in finding that his impairments did not meet an impairment found in the Listings and that he did not discuss all of the relevant medical evidence. Plaintiff argues that the ALJ did not give reasons for his findings and that he failed to discuss evidence

he rejected.  I believe Plaintiff's contentions to be without merit.  In order for a plaintiff's condition to meet or equal a listed impairment, he must satisfy all of the criteria of the given listing.  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  An impairment that meets only some of the criteria of a listed impairment does not qualify.  *Id.*

22.     Plaintiff does not indicate which listed impairment his condition meets.  However, the ALJ's opinion reveals that he carefully considered listing 1.05C.[6]  R. 26.  This particular listing deals with musculoskeletal impairments and the new listings for such impairments took effect in 2002.  Since this case was filed before the date the new listings took effect, the old listings apply.  *See*, Social Security Administration, 66 Fed. Reg. 58010-01 (Nov. 19, 2001) (to be codified at 20 C.F.R. pt. 404, 416).  The ALJ's decision that Plaintiff's impairments did not meet or equal a listed impairment is supported by substantial evidence.

23.     The record indicates that Plaintiff does not satisfy all of the criteria of Listing 1.05C. 20 C.F.R. § 404, Subpt. P, App. 1 § 1.05C (1999). Dr. Diskant, Plaintiff's treating physician from 1991 until early 1994, performed a consultative exam on Plaintiff in August 1997.  R. 325-35.   Dr. Diskant noted that Plaintiff did not suffer from any involuntary muscle spasms and there was no record of active radiculopathy.  R. 334-35.  Further, Dr. Diskant noted that there was a strong possibility that Plaintiff was magnifying his symptoms.  *Id.*  Finally, he found that Plaintiff was capable of light work and could lift 10 pounds constantly, 15 pounds frequently and up to 30 pounds

---

[6]  Listing 1.05C included, "Other vertebrogenic disorders with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months.  With both 1and 2:
> 1.  Pain, muscle spasm, and significant limitation of motion in the spine; and
> 2.  Appropriate radicular distribution of significant motor loss with muscle weakness and sensory reflex loss."  20 C.F.R. § 404, Subpt. P, App. 1 § 1.05C.

The Listing has changed and at the time of determination, "radicular distribution" included radiculopathy.

12

occasionally and should engage in work that would allow him the option to alternate between sitting and standing positions.  R. 335.  His report clearly indicates that Plaintiff did not meet all of the criteria for Listing 1.05C since he did not experience muscle spasms or radiculopathy and further, was capable of light work.

24.     Both Dr. Jones' and Dr. Toner's assessments are in accord with that of Dr. Diskant's. Both Dr. Jones and Dr. Toner were examining physicians, and the opinion of an examining physician who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion.  *Doyal v. Barnhart*, 331 F.3d 758, 763 (10th Cir. 2003)(quoting *Reid v. Chater*, 71 F.3d 372, 374 (10th Cir. 1995)).  Nevertheless, the assessments of Dr. Jones and Dr. Toner lend support to Plaintiff's treating physicians, who indicate that Plaintiff did not meet the criteria for Listing 1.05C.

25.     Dr. Jones performed a consultative exam on Plaintiff in August 1998 and determined that there was no evidence of lumbar radiculopathy and that Plaintiff appeared to be magnifying his symptoms.  R. 347.  Furthermore, Dr. Jones indicated that Plaintiff suffered from no definite muscle spasms.  *Id.*  Finally, Dr. Jones noted that Plaintiff was capable of doing light to medium work and that he could frequently lift up to 20 pounds and could occasionally lift up to 35 pounds.  *Id.*  Dr. Toner performed a consultative exam on Plaintiff in March 1999.  R. 415-21.  Dr. Toner indicated that three out of five Waddell's signs were present and that Plaintiff did not "give as much effort as one would expect he should be able to do, even regarding his injuries."  R. 417-18.  Dr. Toner stated that Plaintiff could engage in light work and lift 10 pounds frequently and 30 pounds occasionally. R. 418.  Both of these physicians' assessments also indicate that Plaintiff's condition does not meet the criteria of Listing 1.05C.

26. Dr. Delahoussaye, who was Plaintiff's treating physician from 1994 through 1999, also indicated that Plaintiff does not meet Listing 1.05C. In July 1997, Dr. Delahoussaye noted that he suspected that Plaintiff suffered from radiculopathy and stated that "patient had a positive response to the diagnostic…which is indicative of…radiculopathy." R. 340-41. However, in September 1997, Dr. Delahoussaye specifically concurred with Dr. Diskant's assessment that there was no evidence of active radiculopathy. R. 338, 399. In December 1998, Dr. Delahoussaye indicated that Plaintiff could return to light work and could lift 20 pounds frequently. R. 365, 97. On July 20, 1999, Dr. Delahoussaye again noted that there was no evidence of either active denervation or radiculopathy. R. 468. Without this or further evidence that Plaintiff met the other criteria of Listing 1.05C, Plaintiff failed to meet the requirements of Listing 1.05C. The ALJ's decision is supported by substantial evidence.

27. In his Memorandum, Plaintiff specifically cites Dr. Delahoussaye's note on August 9, 2003 as evidence of meeting the criteria of listing 1.05C. Dr. Delahoussaye's note states that "Mr. Connick had a positive initial response to the diagnostic…which is indicative of a…radiculopathy." Doc. 16 at 4. *See*, R. 470. The ALJ could not have taken this particular piece of evidence into consideration, as it was not before him. Rather this evidence was presented to the Appeals Council, well after the ALJ had already rendered his decision. Nonetheless, the Court must consider this exhibit since the Tenth Circuit has concluded that new evidence submitted to the Appeals Council becomes part of the record for review. *O'Dell v. Shalala*, 44 F. 3d 855, 859 (10th Cir. 1994); *See* 20 C.F.R. § 404.970(b). Even taking this exhibit into consideration, the ALJ's determination that Plaintiff did not meet the criteria of Listing 1.05C remains supported by substantial evidence. On August 3, 1999 Dr. Delahoussaye did indicate that there was a "positive initial response…which is

indicative of a...radiculopathy." R. 470. However, just two weeks before that date he indicated that there was no evidence of either active denervation or radiculopathy and as discussed above, a positive initial indicator of radiculopathy did not necessarily lead to a final finding of radiculopathy. R. 468; *See* 338, 399. Further, Dr. Delahoussaye saw Plaintiff again at least five more times in 1999 and never again mentioned any indicator of radiculopathy. R. 471-76. He did, however, indicate that Plaintiff's work condition remained the same as he reported in December 1998. R. 475; *See,* 365, 397. Thus, there was no conclusive evidence of radiculopathy and even if there were, there is nothing in the record to indicate that Plaintiff met the remaining requirements of Listing 1.05C. The assessments of Doctors Diskant, Jones, Toner, and Delahoussaye indicate that the ALJ did not err when he found that Plaintiff did not meet Listing 1.05C.

28.     Plaintiff also contends that the ALJ erred in finding that Plaintiff was not credible. I believe this contention must also be rejected. It is well established that the subjective testimony alone that the claimant has symptoms cannot establish a finding of disability. *Gossett v. Bowen*, 862 F.2d 802, 806 (10th Cir. 1988). By statute, objective medical evidence must establish an impairment and statements regarding the intensity and persistence of symptoms must be consistent with findings and signs. 42 U.S.C. § 423(d)(5)(A)(Supp. 1998). Credibility determinations are particularly the province of the finder of fact and the Tenth Circuit has declined to upset such determinations when supported by substantial evidence. *Diaz v. Sec'y of Health and Human Svcs.*, 898 F.2d 774, 777 (10th Cir. 1990).

29.     In making his determination that Plaintiff lacked credibility, the ALJ cited Dr. Diskant, Dr. Toner, and Dr. Jones, who all found that Plaintiff was magnifying his symptoms. R. 25. *See*, 334-35, 347, 417-18. As such, The ALJ did not have to consider Plaintiff's subjective impairments,

as they were not corroborated by the objective evidence which, as discussed above, indicated that Plaintiff's impairments did not meet Listing 1.05C. *See, Diaz*, 898 F.2d at 777. The objective evidence, including the RFC assessment as well as the assessments of Doctors Diskant, Jones, Toner, and Delahoussaye, further indicated that Plaintiff was able to engage in light work. R. 335, 347, 353, 365, 397. The ALJ did not err when he posed a hypothetical to the vocational expert without taking Plaintiff's complaint that he had to lie down 8 to 20 times a day into account because the objective evidence did not indicate any such necessity. R. 60-64. Though the ALJ did not deny that Plaintiff experienced pain, as Dr. Diskant noted, Plaintiff had reached maximum medical improvement and had to accept the level of pain he experienced. R. 335. The ALJ's determination that Plaintiff was not credible is supported by substantial evidence and as such, the decision of the Commissioner should be upheld.

**Recommended disposition**

I recommend that Plaintiff's Motion to Reverse and Remand (Doc. 15) filed June 11, 2003 be denied. Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C). Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to § 636(b)(1)(C), file written objections to such proposed findings and recommendations with the Clerk of the Unitesd States District Court, 333 Lomas Blvd. NW, Albuquerque, NM 87102. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**